UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER ANN PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:20 CV 1426 CDP |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Heather Ann Pierce brings this action under 42 U.S.C. §§ 405 and 1383 seeking judicial review of the Commissioner's final decision denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*.  For the reasons that follow, I will affirm the Commissioner's decision.

## **Procedural History**

On March 13, 2019, the Social Security Administration denied Pierce's September 2018 application for DIB and SSI in which she claimed she became

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.  She is substituted for former Commissioner Andrew Saul as defendant in this action.  *See* Fed. R. Civ. P. 25(d).

disabled on March 16, 2015, because of tachycardia, anxiety, obsessive compulsive disorder, post-traumatic stress disorder, fibromyalgia, sleep apnea with hypersomnia, depression, arthritis, right knee pain and fatty liver disease. (Tr. 91). A hearing was held before an administrative law judge (ALJ) on December 9, 2019, at which Pierce and a vocational expert testified. (Tr. 30-57). On February 5, 2020, the ALJ denied Pierce's claims for benefits, finding that vocational expert testimony supported a conclusion that Pierce could perform work that exists in the national economy. (Tr. 9-28). On July 31, 2020, the Appeals Council denied Pierce's request for review. (Tr. 1-4). The ALJ's decision is thus the final decision of the Commissioner.

In this action for judicial review, Pierce claims that the Commissioner's decision is not supported by substantial evidence. She argues that the ALJ impermissibly evaluated opinion evidence from Pierces' therapist, Carrie A. Gardner and assessed Pierce's residual functional capacity (RFC) without the guidance of opinion evidence from a medical professional. Pierce asks that I reverse the administrative decision and remand for further evaluation.

**Medical Records and Other Evidence Before the ALJ**

With respect to medical records and other evidence of record, I adopt Pierce's recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF 23) as admitted by the Commissioner with unrefuted additional facts

(ECF 24-1).  This statement provides a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for DIB and SSI under the Social Security Act, Pierce must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC—that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011)—and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the

Commissioner may satisfy her burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B. <u>The ALJ's Decision</u>

The ALJ found that Pierce met the insured status requirements of the Act through September 30, 2020 and has not engaged in substantial gainful activity

since March 16, 2015, the date she alleges she became unable to work.  The ALJ found that Pierce has the following severe impairments: degenerative disc disease of the lumbar spine; mild obstructive sleep apnea; morbid obesity; fibromyalgia; asthma; unilateral, primary osteoarthritis of the right knee; major depressive disorder; post-traumatic stress disorder; and binge eating disorder.  However, he found those impairments do not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then found that Pierce had the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that:

> She can lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently, and can stand/walk for about 6 hours and sit for up to 6 hours in an 8 hour work day, with normal breaks. She can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She should avoid exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She should avoid concentrated exposure to operational control of moving machinery. She should avoid unprotected heights and exposure to hazardous machinery. Her work is limited to simple, routine and repetitive tasks. Her work should be in a low stress job, defined as having only occasional changes in the work setting. Her work should not be in a fast-paced production type of job. She should have no interaction with the public. She should have only occasional interaction with co-workers and supervisors with no tandem tasks.

(Tr. 17).  Considering Pierce's RFC, age, education, and lack of past relevant work, the ALJ found vocational expert testimony to support a conclusion that Pierce could perform work as it exists in significant numbers in the national economy as an office helper, photocopy machine operator, and mail clerk.  The

ALJ thus concluded that Pierce was not disabled at any time through the date of his decision.

## C. RFC Assessment

Pierce faults the ALJ for evaluating the effects of her mental impairments on her RFC without opinion evidence. She argues that the ALJ discussed evidence supporting his RFC assessment while ignoring evidence contradicting it, and otherwise did not explain how the evidence equates to his findings. Without guidance from a medical source, Pierce argues, the ALJ could not "create a logical bridge" between the evidence and his RFC determination. She thus claims that the ALJ impermissibly "played doctor" in evaluating her RFC.

RFC is the most a claimant can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; 20 C.F.R. §§ 404.1545(a), 416.945(a). RFC is a medical question that must be supported by some medical evidence of the claimant's ability to function in the workplace. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v.*

*Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Here, the ALJ evaluated the effects of Pierce's mental impairments on four broad categories of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.[2] In doing so, the ALJ discussed Pierce's statements about her impairments and their consistency with her activities of daily life and findings from medical reports. He determined that Pierce has moderate limitations in each area, that is, Pierce's functioning in each area "independently, appropriately, effectively and on a sustained basis is fair" – less than a seriously limited, but more than a slightly limited. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 F. The ALJ then analyzed the effects of these limitations on Pierce's RFC:

---

[2] In cases involving mental impairments, 404 C.F.R. §§ 404.1520a and 416.920a require the SSA to use a "special technique" in the sequential analysis to evaluate the severity of the claimant's mental impairments and determine whether they equal a listing. Under this technique, the ALJ is required to rate the degree of the claimant's functional limitations in the four areas of functioning indicated above and incorporate his pertinent findings and conclusions in his decision. §§ 404.1520a(c)-(e), 416.920a(c)-(e). This technique is not an RFC assessment, but is used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. "The mental RFC assessment . . . requires a more detailed assessment by itemizing various functions contained in [these] broad categories [.]" SSR 96-8p 1996 WL 374184 at* 4 (July 2, 1996). However, an RFC determination is not flawed merely because it does not recite findings at an earlier step in the analysis. *Gann v. Colvin*, 92 F. Supp.3d 857, 885 (N.D. Iowa 2015).

> Her work is limited to simple, routine and repetitive tasks due to her moderate limitation in understanding, remembering and applying information. Her work should be in a low stress job, defined as having only occasional changes in the work setting given her moderate limitation in adapting and managing herself.  Also, due to her moderate limitation in concentration, persistence and pace, the claimant's work should not be in a fast-paced production type of job. Finally, due to her moderate limitation in interacting with others, she should have no interaction with the public, and only occasional interaction with co-workers and supervisors with no tandem tasks required.

(Tr. 17).  The ALJ did not find medical opinion evidence persuasive in his assessment.

As an initial matter, the ALJ did not, as Pierce claims, "pick[] out a few visits that show some evidence that supports his decision while ignoring other evidence that paints a different picture of [Pierce's impairments]."  ECF 22 p. 6. *See Taylor ex rel. McKinnies, v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").  In fact, the ALJ discussed much of the evidence that Pierce claims he ignored.  When evaluating the limitations caused by Pierce's mental impairments, the ALJ noted that Pierce was described as tearful (Tr. 15, 661, 704); that her doctors repeatedly noted that she had a flat or depressed mood and affect (Tr. 16, 1074, 280, 1061-62, 307, 704, 901, 629, 584, 578); that she was described as anxious (Tr, 16, 601); that she

complained of panic attacks, nightmares, and flashbacks of trauma (Tr. 16, 644, 900, 1074-75, 49); that she reported regularly struggling with binge eating and purging due to feelings of guilt regarding her weight (Tr. 16, 703-04, 698, 901); that she complained of daytime sleepiness and sought treatment for her sleep apnea (Tr. 16, 495); and that she tried psychotropic medications without total relief of her symptoms (Tr. 16). ECF 22 p. 5. Moreover, "an ALJ is not required to discuss every piece of evidence submitted . . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Adamczyk v. Saul*, 817 F.App'x 287, 290 (8th Cir. 2020) ("The fact that there was some medical evidence supporting [the plaintiff's] position concerning the severity of her symptoms does not mean that the ALJ's decision was not supported by substantial evidence.").

Rather than "picking and choosing" from the evidence, the ALJ properly considered the evidence Pierce describes and weighed it against Pierce's activities of daily life and other medical evidence. In doing so, the ALJ adequately explained how the evidence cited amounted to the limitations he assessed.

When evaluating Pierce's ability to understand, remember, and apply information, the ALJ noted that Pierce reported difficulty remembering appointments and whether she locked her doors, but she could follow instructions "ok" (Tr. 16, 226); she could drive and help her children with homework (Tr. 15,

- 10 -

222, 224); and her providers noted that she had normal good or appropriate insight and judgment (Tr 15, 295, 336, 679, 708, 712, 901), a normal memory (Tr. 293, 336, 578, 587, 588, 636), and displayed goal directed, logical thought and appropriate thought content (Tr. 15, 293-94, 336, 666, 703, 708, 714, 901, 1043-1055, 1062).  In interacting with others, Pierce testified she isolated herself and did not like to be in crowds, but she shopped in stores weekly (Tr. 15, 224) and testified that she could get along with authority figures (Tr. 15, 226).  And, though Pierce had depressed mood and affect on several occasions, she was noted to be interactive and smiling at times (Tr. 15, 666) or euthymic (Tr. 336, 1045-47, 1050) her speech was regularly reported to be normal (Tr. 16, 294, 336, 630, 634, 666, 1043, 1063), and she was noted to be cooperative (Tr. 16, 336, 934, 936, 947). With respect to her ability to concentrate, persist, and maintain pace, the ALJ also noted that Pierce's complaints of difficulty finishing tasks and paying attention for longer than 15 minutes were not fully consistent with her activities of daily life: she is able to get her children ready for school, get them on and off the bus daily, help them with homework, prepare simple meals, complete household chores, and drive.  (Tr. 16, 222-24, ).  And even though Pierce suffered from flashbacks once a week and triggers related to going towards St. Claire (Tr. 48-49), her providers also repeatedly described her as alert and oriented (Tr. 294, 332, 453, 459, 479, 580, 587, 589, 630, 634, 661, 666, 669, 689, 731, 1063), and to have good or

- 11 -

normal concentration[3] (Tr. 16, 295, 428, 901).  Finally, the ALJ weighed Pierce's fluctuating mood and affect, binge eating, and flashbacks and triggers against reports that she presented with normal mood and affect at times, denied suicidal and homicidal ideation (Tr. 295, 629), displayed no signs of psychosis, and was consistently well-dressed and groomed.  (Tr. 16, 280, 294, 927, 947, 1043-1055, 1062-64).  The ALJ thus found that Pierce was no more than moderately limited in any area of functioning.

Pierce's contention that the ALJ "played doctor" in arriving at this result is likewise without merit.  An ALJ may not "play doctor," that is, "draw improper inferences from the record or substitute a doctor's opinion for his own." *Adamczyk*, 817 F. App'x at 289 (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) ("[T]he ALJ's determination [that the claimant's] medical noncompliance is attributable solely to free will is tantamount to the ALJ 'playing doctor,' a practice forbidden by law."); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975) ("An [ALJ] may not draw upon his own inferences from medical reports.")).

Pierce claims that the ALJ "played doctor" when he formulated his RFC without guidance from a medical professional.  But, as explained above, the ALJ

---

[3] Pierce complained of problems concentrating during several visits in 2017 (Tr. 457, 459, 485, 696, 704).

was not required to rely on opinion evidence. *Hensley*, 829 F.3d at 932. The ALJ properly found the opinion evidence from the state-agency physician unpersuasive because later medical records showed Pierce's mental impairments to be more severe than the limitations the physician assessed.[4] (Tr. 16). He also properly discounted a report from Pierce's therapist as discussed in detail below.

The ALJ did not draw improper inferences from the record either. An ALJ draws improper inferences from the record when he relies on his own interpretation of the relevance of ambiguous treatment notes. *See Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017). *C.f. Cox*, 495 F.3d at 620 n. 6 (explaining that medical records are sufficient so long as they describe the claimant's "functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment."). In *Combs*, the Eighth Circuit found that the ALJ improperly inferred that the notations "no acute distress" and "normal movement of all extremities" contradicted Ms. Combs' statements about her pain. *Id.* It reasoned that the significance of those findings as it related to Ms. Combs' ability to function in the workplace was not clear because her providers also noted that that she had rheumatoid arthritis, prescribed medications for "severe pain," and noted "trigger

---

[4] Pierce does not challenge the ALJ's finding that the state-agency physician's opinion was not persuasive.

- 13 -

point" and "joint pain with" range of motion. *Id.* The Eighth Circuit remanded for further inquiry into the relevance of those treatment notes. *Id.*

Unlike Ms. Combs, Pierce does not identify medical evidence that casts doubt on the import of the findings cited by the ALJ or what findings have ambiguous meaning. She instead argues that, because the ALJ did not rely on medical opinion evidence, the ALJ could not evaluate the medical evidence. However, the evidence cited by the ALJ is probative of Pierce's ability to function. Pierce's mood, affect, speech, concentration, thought process, judgment, cooperativeness, and grooming implicate her functional abilities. Moreover, the ALJ did not craft his limitations based on the medical evidence alone; he also considered her activities of daily life:

> [T]he claimant is able to engage in several activities of daily living such as those set forth above, including shopping, driving, and helping her children with various items. Also of note, the record reflects the claimant stopped working in order to move back to St. Louis and go to school. In April 2018, she reported walking three to four times weekly for 45 minutes each session. As of July 2019, she told her physician that she was walking a mile three times weekly, and had started a home walking program in November 2018. The claimant has described daily activities and exhibited behavior inconsistent with her allegations of disabling symptoms and limitations.

(Tr. 18) (internal citations omitted).

An ALJ is permitted to draw "reasonable inferences" from the record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Here, the ALJ properly weighed the evidence of record to conclude that Pierce did not suffer from

- 14 -

disabling limitations. This evidence was sufficient for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). I agree with Pierce that there is much evidence in the record that could support greater limitations than those assessed by the ALJ. However, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610. Because the ALJ adequately described the evidence of record and explained his reasons for the weight given the evidence, I will not disturb his determination, even if I would have reached a contrary one.

D. Medical Opinion Evidence

Pierce next argues that the ALJ improperly evaluated evidence from Pierce's therapist, Carrie A. Gardner. On November 26, 2019, Gardner opined that "gainful employment would be difficult for [Pierce] to manage at this time" and circled several criteria in the DSM-V listing for Major Depressive Disorder and PTSD that were consistent with Pierce's symptoms. (Tr. 1168-1171). The ALJ found Gardner's report neither persuasive nor unpersuasive because the issue of whether the claimant is able to work is a matter reserved to the Commissioner and Gardner did not provide any work-related restrictions. Pierce argues that this analysis is insufficient, and the ALJ should have articulated how persuasive he considered Ms. Gardner's opinion.

- 15 -

For claims like Pierce's that are filed on or after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinions in light of several enumerated factors and explain how he considered certain factors in his decision. 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinion or prior administrative findings to be . . . .  We may, but are not required to explain how we considered the [other listed factors]."). But, as noted by the ALJ, the issue of whether a claimant is unable to work or "disabled" is a matter reserved to the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). *See also* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (statement that a claimant is unable to work is inherently neither valuable nor persuasive and the Social Security Administration will not explain how such evidence was considered). Instead, a medical opinion must provide a statement "about what [the claimant] can still do despite [her] impairments and whether [the claimant] has any impairment-related limitations" in performing various demands of work activities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Besides concluding that Pierce was unable to work and circling various criteria in the DSM-V listings, Gardner's report did not discuss Pierce's abilities in light of her impairments. Pierce argues that two of the criteria that Gardner circled – "the symptoms cause clinically significant distress or impairment in social,

occupational, or other important areas of functioning," and "problems in concentration" – are statements about Pierce's limitations that the ALJ should have discussed. (Tr. 1169-1171). Pierce also highlights that Gardner noted "Plaintiff makes an effort to keep her sessions, though fearfulness and/or worthlessness remain barriers she is working on overcoming as they manifest in her avoiding people/places/things." (Tr. 1168). However, none of these statements indicate what Pierce "can still do" despite her impairments. What the claimant "can still do" is the central component of a medical opinion under the new regulations. See Revisions to Rule Regarding the Evaluation of Medical Evidence, 2016 WL4764999, 81 Fed. Reg. 62560-01 at *6 (Sept. 9, 2016) ("A more appropriate focus of medical opinions would be perspectives from medical sources about claimants' functional abilities and limitations" rather than claimants' "[d]iagnoses and prognoses" – which "do not describe how an individual functions."). Even if these statements could be interpreted as descriptions of Pierce's functional abilities, they did not provide any support for formulating a different RFC given their vagueness. And the ALJ incorporated Pierce's problems in concentration and difficulty interacting with people in his RFC assessment.

Because Gardner did not identify what Pierce can still do despite her impairments and the issue of whether Pierce can work is a matter reserved to the Commissioner, Gardner's report did not constitute a medical opinion under

sections 404.1513(a)(2) and 416.913(a)(2).  *See Murphy v. Kijakazi*, No. 1:20-CV-154-RWS, 2021 WL 3033404, at *7 (E.D. Mo. 2021) (finding that physician's report was not a medical opinion because it did not describe the claimant's functional abilities).  The ALJ therefore did not err by deeming her report neither persuasive nor unpersuasive and failing to further evaluate Gardner's report.

## Conclusion

For the reasons set out above on the claims raised on this appeal, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination of non-disability.  Because substantial evidence on the record as a whole supports the ALJ's decision, the decision must be affirmed.  *Davis v. Apfel,* 239 F.3d 962, 966 (8th Cir. 2001).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Heather Pierce's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2022.